# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

CARLOS BELTRAN

FILED
MAY 1 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**08CR 385**

CRIMINAL COMPLAINT
MAGISTRATE JUDGE ASHMAN

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May 13, 2008 in Cook county, in the Northern District of Illinois defendant(s),

knowingly and intentionally possessed with the intent to distribute a controlled substance, namely in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title 21 United States Code, Section(s) 841(a)(1).

I further state that I am a(n) Special Agent, Drug Enforcement Administration and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

May 14, 2008 at Chicago, Illinois
Date                            City and State

MARTIN C. ASHMAN, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

| | |
|---|---|
| **STATE OF ILLINOIS** ) | |
| ) | SS |
| **COUNTY OF COOK** ) | |

## AFFIDAVIT

I, Donald C. Wood, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), United States Department of Justice, and have been so employed for over 10 years. Since September 2001, I have been assigned to the DEA Chicago Field Division. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, and 848. I have been involved in various types of investigations, in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and investigations involving the laundering and concealing of proceeds of drug trafficking. I received specialized training in the enforcement of laws concerning the activities of narcotics traffickers. Immediately prior to becoming a Special Agent with the DEA, I was a criminal investigator for the Cook County State's Attorney's Office and was so employed for approximately four years.

2. The information set forth in this Affidavit is based upon my participation in this investigation, interviews of witnesses, information obtained from other law enforcement officers, and my experience and training. The recitation of facts contained in this Affidavit is not meant to be a complete narrative of all that has occurred in connection with this investigation, but is only a summary of facts necessary to show probable cause that Carlos Beltran possessed with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

**Investigation**

3.     On or about May 13, 2008 at approximately 2:35 pm, DEA Agents went to Beltran's residence located on South Harvey Street, Berwyn, Illinois, in order to conduct an investigative interview of Beltran and any others that reside at the aforementioned residence. Upon arriving at the residence, Agents knocked and rang the bell for the residence. The residence is a two-story structure. During that time, agents observed a Hispanic male, subsequently identified as Individual A, look out the second story window. Agents then identified themselves to Individual A as police officers and asked him to answer the front door.

4.     At approximately 2:45 pm, Individual A answered the door while talking on his cellular telephone. At that time, Individual A related to Agents that he spoke little English and that he the owner of the residence was on his cellular telephone in order to interpret. At that time, Individual A handed your affiant his cellular telephone. The person on Individual A's cellular telephone identified himself as Carlos Beltran. Beltran related to your affiant that he resides at the residence and that he (Beltran) was currently at work. Beltran further related that he had no illegal contraband in his residence and that he would allow agents to search his residence when he returned home. Beltran informed your affiant that it would take him approximately an hour to get from work to his residence. Beltran also informed your affiant that he lives in the building and that Individual A rented the second floor apartment.

5.     Your affiant requested that Beltran ask Individual A in Spanish if he (Individual A) would allow agents to search his up-stairs apartment while agents waited for Beltran. Your affiant then gave Individual A the cellular telephone. Individual A then had a short conversation in Spanish before Individual A returned the telephone to your affiant. At that time, Beltran related to your

affiant that both Individual A and Beltran would grant agents consent to search their residences but that Individual and Beltran both insisted that Beltran be present for the search.

6. While waiting for Beltran, Individual A remained outside in the front of the residence with Agents. At or around approximately 3:00 pm, agents observed a male individual, later identified as Beltran, access his backyard from the alley and approach the rear of his residence while utilizing his cellular telephone. At that time, agents established surveillance on the front and rear of the residence. During that time, Agents also searched garbage cans located in the alley for the residence. The garbage cans that DEA Agents searched were labeled with the number for the residence. Agents found and seized what appeared to be multi-kilogram packaging material. The packaging materials found in the garbage cans later field tested positive for the presence of cocaine. Also during that time, Agents in the front of the residence heard footsteps coming from the second floor apartment and then heard the door to the second floor apartment shut.

7. At approximately 3:30 p.m., Agents stopped Beltran as he exited the rear door to his residence. Agents noted that Beltran was shaking, sweating profusely, and appeared to be extremely nervous. Agents then conducted a security pat down of Beltran's outer clothing. As a result, Agents noted that Beltran had two large bundles of United States Currency that bulged from his front pockets. Beltran related to Agents that he had just arrived at the residence and he was going to notify Agents that he had arrived. Beltran related to Agents that he never entered the residence even though Agents saw him walk toward the house approximately 30 minutes prior and had caught him exiting the residence.

8. At approximately 3:35 pm., Agents conducted an interview with Individual A. A DEA Agent fluent in Spanish was called to interpret the conversation. As a result of the interview, Individual A gave verbal and written consent to allow Agents to search his apartment located on the

second floor of his residence, as well as the garage and his vehicle that was parked within the garage. The consent form was written in Spanish. Agents then in fact searched the second floor of the residence and found two large plastic storage bins in a room of Individual A's apartment. One storage bin was filled with large amounts of United States Currency ("USC") that was packaged and wrapped in blocks as well as two separate bags filled with USC and a notebook that, based on my experience and training, appeared to be a drug ledger. The second container held a Royal Sovereign money counter and materials that, based on my experience and training, are used to package narcotics and/or drug proceeds. Agents also found and seized a bag filled with brick-like packaging material in the closet within the same room. Based on my training and experience, the packaging material is the kind used to package narcotics and/or drug proceeds. Agents also found and seized a semi-automatic pistol and magazine containing ammunition for the gun in Individual A's room.

9. At approximately 3:50 pm, Agents informed Beltran, among other things, he was being placed in custody. Beltran then informed Agents that he wanted to cooperate with law enforcement. At that time, Beltran gave verbal and written consent allowing Agents to search his residence and garage. As a result of the search, agents found and seized approximately three kilograms of a white powder substance that appeared to be cocaine from a dryer machine located on the top of the second floor rear common area outside of Individual A's apartment. Agents also found and seized an additional plastic grocery bag containing a large amount of USC from inside the washing machine located next to the aforementioned dryer machine. Agents also found and seized from Beltran's residence three scales, packing material, a heat sealer, money bands, rubber gloves, a shot gun, and plastic Ziploc bags which were thrown in the garbage.

10. A DEA narcotics detection canine was brought to the residence and alerted to the cocaine found in the dryer machine; the money found in the washing machine; the discarded packing

material found in the second floor apartment closet; the USC found in the storage bin; the packaging material and money counter found in the other storage bin; the discarded Ziploc bags found in Beltran's apartment; and the packaging material discarded in the garbage bin behind the residence located in the alley.

### Conclusion

Based on the foregoing, Affiant respectfully submits that there is probable cause to believe that Carlos Beltran possessed with intent to distribute a controlled substance, namely, approximately three kilograms of cocaine, Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

Donald C. Wood
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me,
This 14th day of May, 2008

UNITED STATES MAGISTRATE JUDGE